**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PHILIBERT F. KONGTCHEU,

        Plaintiff,

v.

RICHARD E. CONSTABLE, III, et al.,

        Defendant.

Civil Action No.: 12-6872

**OPINION**

**CECCHI, District Judge.**

## I.    INTRODUCTION

Before the Court is the unopposed motion of Defendants Richard E. Constable, III, and the New Jersey Department of Community Affairs (collectively, "Defendants") to dismiss the Second Amended Complaint of pro se Plaintiff Philibert F. Kongtcheu ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 38.)  No oral argument was heard pursuant to Federal Rule of Civil Procedure 78.  For the following reasons, Defendants' motion is granted.

## II.    BACKGROUND

Plaintiff filed his initial Complaint on October 22, 2012, in which he asserted various claims arising out of his dissatisfaction with his housing subsidy.  (ECF No. 1.)  Plaintiff named as the sole defendant Richard E. Constable, III ("Constable"), in his official capacity as the Commissioner of the New Jersey Department of Community Affairs ("NJDCA").  Id.  Plaintiff's Complaint was subject to screening on the merits pursuant to 28 U.S.C. § 1915(e)(2).[1]  Deeming

---

[1] This statute authorizes courts to permit the filing of an action without prepayment of filing fees.  The statute's screening mechanism provides an action "shall be dismiss[ed] . . . if the court

the complaint unclear, the Court issued an order on January 31, 2013, dismissing the complaint without prejudice and allowing Plaintiff to file an amended complaint. (ECF No. 3.) The Court directed Plaintiff to provide a simplified explanation, in any amended complaint, of the governmental body or agency he intended to sue, the particular applications he had made to any such agency, and whether he had exhausted his administrative remedies. See id. at 4. The order further indicated that Plaintiff could state in a separate section of his amended complaint the particular regulation or statute he sought to attack as unduly vague. See id. at 5.

On March 25, 2013, Plaintiff filed his Amended Complaint. (ECF No. 5.) Plaintiff again named as the sole defendant Constable, in his official capacity as the Commissioner of the NJDCA. The Amended Complaint was not a stand-alone pleading; rather, the Amended Complaint referred back to Plaintiff's original Complaint in an effort to clarify it and to respond to the Court's January 31, 2013 order. Constable filed an Answer to Plaintiff's Amended Complaint on October 30, 2013. (ECF No. 18). Constable filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) on April 11, 2014. (ECF No. 21.) Both the Answer and the Motion addressed only Plaintiff's Amended Complaint (and not the original Complaint). For clarity's sake and in light of Plaintiff's pro se status,[2] the Court directed Plaintiff to file one new, all-inclusive Second Amended Complaint. (ECF No. 28.)

On May 12, 2015, Plaintiff filed his Second Amended Complaint. (Second Amended

---

determines that [it] is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

[2] See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotations omitted)).

Complaint ("Second Am. Compl."), ECF No. 29.)  This time, Plaintiff named two defendants: (1) Constable, in his official capacity as the Commissioner of the NJDCA, and (2) the NJDCA.[3]

Plaintiff's Second Amended Complaint alleges the following facts.  Plaintiff was a resident of Hudson Manor Health Care Center ("Hudson Manor"), a nursing home in Secaucus, New Jersey, from July 9, 2011 to March 16, 2014.  (Id. ¶ 5.)  Plaintiff was originally transferred to Hudson Manor from Hoboken University Medical Center for physical therapy following the onset of partial paralysis due to "Post Polio Syndrome."  (Id.)

Plaintiff received a Non-Elderly Disabled Section 8 voucher ("NED Voucher") from the U.S. Department of Housing and Urban Development ("HUD") on December 28, 2011.  (Id. ¶ 7, Ex. A23.[4])  The NJDCA is the public housing agency ("PHA") charged with administering the Housing Choice Voucher Program pursuant to which Plaintiff received his NED Voucher.  (Id.) According to the terms of the NED Voucher, "[u]nder this program, the [voucher holder] chooses a decent, safe and sanitary unit to live in," and "[i]f the owner [of the unit] agrees to lease the unit to the [voucher holder] under the housing choice voucher program, and if the PHA approves the unit, the PHA will enter into a housing assistance payments (HAP) contract with the owner to make monthly payments to the owner to help the [voucher holder] pay the rent."  (Id.)  Plaintiff understood the NED Voucher could be applied to "a two bedroom rental unit . . . with a rental cap

---

[3] In his Second Amended Complaint, Plaintiff states the term "defendant" also refers to "any named employee of the [NJDCA] under the authority of the Commissioner, acting in an official capacity in relation to the subject matter of the complaint."  (Second Am. Compl. ¶ 1.) However, Plaintiff only named as defendants Constable, in his official capacity as the Commissioner of the NJDCA, and the NJDCA and, thus, the Court will construe this action as only proceeding against them.

[4] Plaintiff attached three large exhibits to his Second Amended Complaint, each consisting of numerous documents.  Plaintiff stamped each page of each exhibit with a unique alphanumeric identifier.  For ease of reference, the Court will refer to Plaintiff's exhibits herein using these alphanumeric identifiers.

in Hudson County at $1,393 per month," and later learned a utility allowance would be deducted from that maximum rental amount. (Id. ¶¶ 7-9.)

Plaintiff found it very difficult to locate desirable housing that would accommodate his disability and also fall within the rental cap provided by his NED Voucher. (Id. ¶ 12.) Faced with this difficulty, Plaintiff communicated extensively with the NJDCA via letter, fax, phone, and in-person meeting, seeking "reasonable accommodations" for his disability.  In sum, Plaintiff requested the following assistance from the NJDCA, which he characterized as "reasonable accommodations": (1) permission to participate in the NJDCA's homeownership voucher program, which would permit Plaintiff to apply his NED Voucher to the purchase of a home, given that Plaintiff was having difficulty locating housing that could accommodate his disability in the rental market; (2) conversion of his NED Voucher to a three-bedroom voucher to allow Plaintiff to accommodate his children and a live-in aide; and (3) approval of applications for housing units that Plaintiff selected but for which the rent exceeded the NED Voucher's cost limitation.[5]  (Id. ¶¶ 12-13, 15, 20.)

In response, NJDCA representatives communicated the following to Plaintiff: (1) Plaintiff was not eligible to participate in the NJDCA's homeownership voucher program as he had not participated in the rental voucher program for at least one year; (2) the NJDCA was reviewing Plaintiff's request for a live-in aide;[6] and (3) Plaintiff's requests for approval to rent various units

---

[5] Plaintiff requested the NJDCA both (1) make exceptions to the rental cap indicated on his NED Voucher and (2) assist him by negotiating with potential landlords to lower the rent of units in which Plaintiff was interested, so the rental cost would not exceed the NED Voucher's cost limitation. (Id. ¶¶ 20-21.)

[6] According to Plaintiff, representatives of the NJDCA communicated confusing and contradictory messages to him regarding the documentation required for a live-in aide.  It appears from the Second Amended Complaint, however, the NJDCA eventually received the required documentation and indicated that Plaintiff's application for a live-in aide was under review. (Id. ¶¶ 26-27, 33; id. ¶ 70, Ex. A70.)  The Second Amended Complaint also alleges the NJDCA

4

were denied as the rental costs of the units exceeded the rental cap provided in the NED Voucher. (Id. ¶¶ 14, 20, 26-27.)  Believing his requests and follow-up letters thereto had been unfairly ignored and denied, Plaintiff requested an administrative hearing from the NJDCA hearing coordinator to review these actions on July 17, 2012.  (Id. ¶ 37.)  On July 25, 2012, Plaintiff received a letter from Hearing Officer Dawn Sullivan, stating Plaintiff was not entitled to a hearing as Plaintiff was an applicant to the Housing Choice Voucher Program and was not yet a participant in the program.  (Id., Ex. A83.)  Officer Sullivan informed Plaintiff that she would nevertheless forward his concerns to the Regional Supervisor.  (Id. ¶ 37.)

On August 2, 2012, Plaintiff received a letter from the NJDCA indicating the time period within which Plaintiff was required to locate housing eligible for assistance under his voucher program was set to expire on August 22, 2012 and no extension would be granted.  (Id. ¶ 38, Ex. A84.)  Plaintiff responded with a letter reiterating his request for "reasonable accommodations" in the form of admittance to the homeownership voucher program, which would allow him to pursue a wider range of housing options.  (Id., Ex. A85.)  On September 20, 2012, Plaintiff received a letter from the NJDCA indicating Plaintiff's voucher had actually expired on April 28, 2012, and Plaintiff could contact the local Field Office Supervisor to request an extension.  (Id., Ex A100.)  On September 24, 2012, Iraisa C. Orihuela-Reilly of Disability Rights New Jersey wrote a letter to the Field Office Supervisor on Plaintiff's behalf, requesting an extension of Plaintiff's time to locate suitable housing pursuant to 24 C.F.R. § 982.303(b)(2), which requires "the PHA must extend the voucher term up to the term reasonably required" as a reasonable accommodation to a person with a disability.  (Id. ¶ 41, Ex. A102-103.)

---

changed his voucher from a two-bedroom-eligible voucher to a one-bedroom-eligible voucher because Plaintiff's home was not the primary residence for his children.  (Id. ¶ 25.)

Plaintiff alleges in his Second Amended Complaint the NJDCA's failure to make the "reasonable accommodations" requested—namely, failure to approve Plaintiff's requests to rent apartments at amounts greater than the rental cap permitted by his NED Voucher, failure to grant Plaintiff's request for a live-in aide, failure to admit Plaintiff to the homeownership voucher program, and failure to assist Plaintiff generally with his housing search—constitute actionable violations under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701 et seq.; the Federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601 et seq. and 24 C.F.R.; and the NJCFA Housing Choice Voucher Administrative Plan and Guide to the housing choice voucher program. (Id. ¶¶ 45-83, 121.)

Plaintiff also argues: the NJDCA's failure to accommodate his requests violated Plaintiff's rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution (id. ¶¶ 97-112, 123); the rules or regulations governing the terms of the Housing Choice Voucher Program were unconstitutionally vague (id. ¶¶ 47-48, 102-108); the NJDCA violated the "Olmstead mandate," established in Olmstead v. L.C., 527 U.S. 581 (1999) (id. ¶¶ 89-96, 122); and the NJDCA is liable to Plaintiff for reckless endangerment and emotional distress as a result of Plaintiff's continued stay at the Hudson Manor nursing home pending his ability to find affordable and accessible housing (id. ¶¶ 113-118). Finally, Plaintiff alleges the NJDCA violated the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 et seq. for failing to communicate with Plaintiff via fax or email in lieu of regular mail. (Id. ¶¶ 84-88, 124.) Plaintiff seeks declaratory and injunctive relief requiring Defendants to immediately start paying for Plaintiff's current rental accommodations and grant Plaintiff the accommodations he seeks.

(Id. ¶¶ 120-127.)  Plaintiff also requests damages and that the Court order the NJDCA to establish various policies and procedures.  (Id. ¶¶ 124, 126, 127-129.)

On May 12, 2015, Defendants filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff did not oppose the motion.

## III.   LEGAL STANDARD

A motion to dismiss a complaint will be granted where the court lacks subject matter jurisdiction to hear the claim, Fed. R. Civ. P. 12(b)(1), or where the complaint fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).  A federal court lacks subject matter jurisdiction to hear claims barred by the Eleventh Amendment.  See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 794 n.2 (3d Cir. 1996) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)).  The Eleventh Amendment-immunity defense is a facial attack on federal jurisdiction and is therefore decided in the same procedural posture as a motion to dismiss pursuant to Rule 12(b)(6).  Kirkland v. DiLeo, No. CIV. 2:12-1196 KM, 2013 WL 1651814, at *3 (D.N.J. Apr. 15, 2013).  Under Rule 12(b)(6), a complaint fails to state a claim upon which relief can be granted if, accepting all of the complaint's well-pleaded allegations as true and viewing them in the light most favorable to the plaintiff, there is no "reasonable reading of the complaint [under which] the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotation marks omitted).

## IV.   DISCUSSION

Defendants contend dismissal is warranted on five grounds.  First, Defendants argue Plaintiff fails to state any claims in the Second Amended Complaint and thus fails to meet the requirements of Rule 8(a).  (Defendant's Brief ("Def. Br."), ECF No. 38-4 at 2-3.)  Second, Defendants argue Plaintiff's suit against them is barred by sovereign immunity under the Eleventh

Amendment to the U.S. Constitution. (Id. at 3-7.) Third, Defendant Constable argues he is entitled to qualified immunity, even if the Court finds sovereign immunity has been waived. (Id. at 7-8.) Fourth, Defendants argue any state law claims against them are barred because of Plaintiff's failure to file a Notice of Tort Claim, N.J. Stat. Ann. § 59:8-8, or a Notice of Contract Claim, N.J. Stat. Ann. § 59:13-1. (Id. at 8-10.) And, fifth, Defendants argue the Second Amended Complaint should be dismissed for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Id. at 10-19.)

The Court disagrees with Defendants' contention that Plaintiff's Second Amended Complaint fails to state any claims at all. Consistent with its obligation to construe pro se pleadings liberally, the Court has noted above various claims that may be gleaned from the Second Amended Complaint. The Court finds, however, that Plaintiff's claims are not claims for which this Court can grant relief.

As a preliminary jurisdictional matter, the Court addresses the implications of the Eleventh Amendment for this case. The Eleventh Amendment "has been interpreted to make states generally immune from suit by private parties in federal court," and this sovereign immunity "extends to state agencies and departments." MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 503 (3d Cir. 2001). The NJDCA is a statutory department within the executive branch of the state of New Jersey and functions as an arm of the state. N.J. Stat. Ann. § 52:27D-1. Constable is the Commissioner of and oversees the NJDCA. (Def. Br. at 5.) Thus, absent an exception, Plaintiff's suit is barred by Eleventh Amendment sovereign immunity.

There are three exceptions to sovereign immunity: "(1) congressional abrogation, (2) state waiver, and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." MCI Telecomm. Corp., 271 F.3d at 503. Plaintiff's claims against the

NJDCA do not fall under any exception and thus are barred by the Eleventh Amendment. Plaintiff's claims for prospective injunctive and declaratory relief against Constable, however, fall within the third exception and thus are not barred by the Eleventh Amendment. Under the third exception, pursuant to the doctrine established in Ex Parte Young, 209 U.S. 123 (1908), "individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." MCI Telecomm. Corp., 271 F.3d at 506; see also Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003) (state officer sued in her official capacity under the doctrine of Ex Parte Young was a "public entity" subject to liability under ADA). Thus, Plaintiff's claims for prospective injunctive and declaratory relief against Constable, in his official capacity as the Commissioner of the NJDCA, are not barred by the Eleventh Amendment to the extent they allege ongoing violations of federal law.[7] Plaintiff's claims for damages, however, are barred by the Eleventh Amendment.

### A.  Americans with Disabilities Act and Rehabilitation Act Claims

Plaintiff fails to state a claim for violations of Title II of the ADA, 42 U.S.C. §§ 12131-12165, or Section 504 of the RA, 29 U.S.C. § 701 et seq.. Both the ADA and the RA provide that public entities must reasonably modify their "policies, practices, or procedures" to avoid discrimination against individuals with disabilities, as long as the modification does not fundamentally alter the nature of the institution's services, programs, or activities or otherwise impose undue burden. See 28 C.F.R. § 35.130(b)(7); see also Juvelis v. Snider, 68 F.3d 648, 653 (3d Cir. 1995); Easley v. Snider, 36 F.3d 297, 304 (3d Cir. 1994). Claims under Title II and § 504

---

[7] Because Plaintiff only names Constable in his official capacity, Constable's qualified immunity argument does not apply here. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

are subjected to the same analysis. See Castro v. Bayonne Hous. Auth., Civ. No. 10-403 (DRD), 2010 WL 1849997, at *3 (D.N.J. May 7, 2010).

To determine whether a violation of either Title II or § 504 has occurred, the Court must first determine if there has been a prima facie showing of disability discrimination. See Liberty Res., Inc. v. Phila. Hous. Auth., 528 F. Supp. 2d 553, 565 (E.D. Pa. 2007). To establish a prima facie showing of disability discrimination under the ADA, a plaintiff must show "1) he or she has a disability; 2) he or she is otherwise qualified; and 3) he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." Id. (citing Jones v. City of Monroe, 341 F.3d 474, 477 (6th Cir. 2003)).[8]  Only after there has been a prima facie showing of disability discrimination must the Court engage in a reasonable accommodation analysis. Id.

Here, in the Second Amended Complaint, Plaintiff has not alleged a prima facie case of discrimination under the ADA or RA because Plaintiff has not alleged Defendant's failure to accommodate him was due to his disability.   It is not disputed that Plaintiff is a handicapped or disabled person.   Plaintiff has not alleged, however, he was denied various accommodations because of his disability.   Plaintiff received a NED Voucher to help him afford a unit of his choosing in the private market.  Plaintiff alleges the NJDCA denied Plaintiff's applications for rental units because they had a cost greater than the rental cap provided in his voucher, not on account of his disability. Plaintiff acknowledges the NJDCA indicated it was reviewing his request

---

[8] Similarly, to establish a prima facie showing of disability discrimination under the RA, a plaintiff must show "(1) he or she is a 'handicapped individual,' (2) he or she is 'otherwise qualified' for participation in the program, (3) the program receives 'federal financial assistance,' and (4) he or she was 'denied the benefits of' or 'subject to discrimination' under the program." Liberty Res., Inc. v. Phila. Hous. Auth., 528 F. Supp. 2d 553, 565 (E.D. Pa. 2007) (citing Nathanson v. Med. Coll. of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991)).

for a live-in aide, meaning the agency did not deny him any accommodation in that case. Finally, as Plaintiff contends, the NJDCA did not admit Plaintiff to the homeownership voucher program because Plaintiff was not a member of the rental voucher program for at least one year, not because of Plaintiff's disability.[9]

Because Plaintiff has not established a prima facie case of discrimination, the Court need not undertake a reasonable accommodation analysis. See id. ("If a plaintiff cannot establish a prima facie case of discrimination there is no violation of either the ADA or the RA and no accommodations are necessary.").

**B.      Fair Housing Amendments Act Claims**

Plaintiff fails to state a claim for violation of the FHAA, 42 U.S.C. § 3601 et seq. and 24 C.F.R, and therefore the Court will dismiss his FHAA claim. In his Second Amended Complaint, Plaintiff does not point to any specific FHAA provisions. However, because Plaintiff brings a reasonable accommodation claim, the Court assumes Plaintiff seeks relief under § 3604. To the extent Plaintiff seeks relief under a different provision, the Court will dismiss this claim without prejudice.

Section 3604 prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling" on the basis of that person's handicap, and states that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. §§ 3604(f)(1), 3604(f)(3)(B).

---

[9] The status of Plaintiff's requests for a live-in aide and an extension of his voucher are unclear to the Court.

Although a private right of action exists under 42 U.S.C. § 3613 for persons aggrieved by a discriminatory housing practice, the Third Circuit has stated that "[n]othing in the text or legislative history of § 3604(f)(1) suggests . . . that Congress intended to regulate and thereby subject to judicial review the decision-making of public agencies which sponsor housing for the handicapped." Growth Horizons, Inc. v. Del. Cnty., Pa., 983 F.2d 1277, 1283-84 (3d Cir. 1993); see also Taylor v. Hous. Auth. of New Haven, 267 F.R.D. 36, 49 (D. Conn. 2010) (citing Growth Horizons, 983 F.2d at 1283, for the proposition "[t]here is authority suggesting that § 3604 applies only to landlords, owners, and others who offer dwellings for rent or sale, and therefore that the statute would be inapplicable to a PHA administering a Section 8 voucher program").

Moreover, in the Second Amended Complaint Plaintiff has not alleged a prima facie case of discrimination under § 3604 as he has not alleged Defendants' failure to accommodate him hurt him by reason of his disability. See Taylor, 267 F.R.D. at 70, aff'd, 645 F.3d 152 (2d. Cir. 2011) (Section 504 of the RA and the FHAA are "addressed to the 'rules . . . that hurt [people with disabilities] by reason of their handicap, rather than that hurt them solely by virtue of what they have in common with other people'"); Hopkins v. Springfield Hous. Auth., No. 11-3347, 2014 WL 3583857, at *5 (C.D. Ill. July 21, 2014) (dismissing FHAA claims based on reasonable accommodation in part because plaintiff "failed to allege any facts suggesting he was treated differently because of his disability"). In Taylor, 267 F.R.D. 36, a case very similar to the instant matter, the district court held (and the Second Circuit affirmed) a PHA's rejection of a Section 8 program participant's request "for an exception rent to pay for the grab-bars" needed for his disability did not constitute a failure to provide reasonable accommodation under the FHAA or the RA, based on the rationale that "the 'benefit' of Section 8 does not include housing, or a guarantee that a participant will find suitable housing. . . . [t]he benefit of the Section 8 Program for its

12

participants is that the program provides them financial assistance to afford units available in the private market." Id. at 73-74.

Here, Plaintiff received a voucher to help him afford a unit of his choosing in the private market. Plaintiff alleges the NJDCA denied Plaintiff's applications for rental units because they cost more than the rental cap provided in his voucher, not on account of his disability. Plaintiff contends the NJDCA did not admit Plaintiff to the homeownership voucher program because Plaintiff was not a member of the rental voucher program for at least one year, not because of his disability. Finally, Plaintiff acknowledges the NJDCA indicated it was reviewing his request for a live-in aide, meaning that the agency did not deny him any accommodation in that case.

### C.    Remaining Claims

Plaintiff argues the NJDCA is compelled to grant his requests for accommodation by the Supreme Court's decision in Olmstead v. L.C., 527 U.S. 581 (2009), which held the proscription of discrimination by the ADA

> may require placement of persons with mental disabilities in community settings rather than in institutions . . . when the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities.

Id. at 587. Olmstead's integration mandate appears to apply primarily to patients with mental health disabilities, though the ADA does not limit the definition of a "qualified individual with a disability" to individuals with mental disabilities. 42 U.S.C. § 12131. The Third Circuit has held "Olmstead requires that patients eligible and desirous of community placement be discharged into community-based programs if placement can be reasonably accommodated, taking into account the resources of the state and the needs of other persons in its care." Frederick L. v. Dep't of Pub. Welfare of Pa., 422 F.3d 151, 157 (3d Cir. 2005) (citing Olmstead, 527 U.S. at 587). If Olmstead

would apply to physical disabilities such as Plaintiff's, Plaintiff's Second Amended Complaint does not explain the connection between Plaintiff's ongoing stay in Hudson Manor and the actions of the NJDCA (who offered Plaintiff a NED Voucher to obtain housing in the community).  In other words, Olmstead is targeted at the medical treatment plans afforded to individuals by public entities, rather than the provision of subsidized housing to physically disabled persons.  Thus, Plaintiff's Second Amended Complaint fails to state a claim under Olmstead.

In his Second Amended Complaint, Plaintiff alleged the NJDCA violated his Fifth and Fourteenth Amendment Due Process Rights by their "repeated ignorance of plaintiff's right to adequate notice, a hearing and a neutral judge about his grievance" and the regulations governing the size of Plaintiff's voucher—i.e., the number of bedrooms—violated his due process rights because they were unconstitutionally vague.  (Second Am. Compl. ¶¶ 98-99.)  In response to this Court's order instructing Plaintiff to clarify which law or laws he sought to attack as vague, Plaintiff stated in his Second Amended Complaint that the guidance in the Guide to the Housing Choice Voucher Program was unduly vague.  (Id. ¶ 102.)

The Supreme Court has held the Fourteenth Amendment's Due Process Clause has both a procedural and a substantive component.  Nicholas v. Penn. State Univ., 227 F.3d 133, 138-39 (3d Cir. 2000).  One may challenge a legislative act or non-legislative state action for violation of substantive due process.  Id.  Under the prong limiting non-legislative state action, "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are 'arbitrary, irrational, or tainted by improper motive.'"  Id. at 139 (internal quotations omitted).  To find a violation of substantive due process, the Third Circuit has held the conduct of governmental employees must amount to an abuse of official power that "shocks the conscience."  United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 399-

14

400 (3d Cir. 2003) ("[E]xecutive action violates substantive due process only when it shocks the conscience.").  To be entitled to substantive due process protection, a property interest must be "fundamental."  Nicholas, 227 F.3d at 139.  Procedural due process requires that the state procedure for challenging the deprivation of a protected property interest satisfy certain procedural requirements. DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 53 F.3d 592, 597 (3d Cir. 1995), abrogated on other grounds, United Artists Theatre Circuit, Inc., 316 F.3d 392.

Plaintiff lacks a protected property interest necessary to state a claim for violation of either procedural or substantive due process, as he has not asserted the state deprived him of any property right.  Plaintiff does not allege the NJDCA deprived him of the ability to participate in the Housing Choice Voucher Program; though Plaintiff's voucher may have expired, the NJDCA informed him he could request an extension or apply for another voucher.  (Second Am. Compl., Ex. A84.) Rather, the NJDCA merely refused to approve Plaintiff's applications for units that exceeded the cost limitations prescribed by his voucher.  See Reyes-Garay v. Integrand Assur. Co., 818 F. Supp. 2d 414, 435 (D.P.R. 2011) ("A Section 8 tenant does not have the right to choose absolutely any housing unit; their rights are limited to those unit[s] in which the landlord agrees to contract with the local housing authority and [are] further limited [by other factors].").

Plaintiff's claim that the regulations governing the Housing Choice Voucher Program are unconstitutionally vague also fails because the purpose of the void for vagueness doctrine is "to give 'fair warning' of prohibited conduct," and the inquiry is "whether the statute or standard is sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." San Filippo v. Bongiovanni, 961 F.2d 1125, 1136 (3d Cir. 1992). Here, though the Court appreciates that the housing voucher program guidelines and Plaintiff's interactions with the NJDCA may have been confusing, Plaintiff does not allege he engaged in

any prohibited conduct for which he was found liable for penalties or punishment.

Plaintiff's allegation that Defendant is liable under the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 et seq., for failing to communicate with Plaintiff via fax or email is without merit. Plaintiff does not cite any portion of that law or other law that would require Defendant to communicate with Plaintiff electronically.[10]

Finally, Plaintiff included "reckless endangerment" and "emotional distress" among the counts in his Second Amended Complaint. Because this Court dismisses Plaintiff's federal law claims, the Court lacks jurisdiction over any state law tort or contract claims that Plaintiff may have intended to include in his Second Amended Complaint. 28 U.S.C. § 1367(c)(3). Further, to the extent those claims are claims for monetary damages, they are barred by the Eleventh Amendment. See Reyes-Garay, 818 F. Supp. 2d at 428-29 (dismissing all claims for monetary relief against defendants in their official capacities as PHA officers due to sovereign immunity defense but retaining jurisdiction over all claims for prospective injunctive relief against the PHA and defendants in their official capacities).

---

[10] Plaintiff cites 15 U.S.C. § 7001(a)(2), which provides "a contract relating to [a transaction in or affecting interstate or foreign commerce] may not be denied legal effect validity, or enforceability solely because an electronic signature or electronic record was used in its formation." (See Second Am. Compl. ¶ 85.) This provision is inapplicable to this case as it applies to the force of law given to a signature on a contract transmitted via electronic means, and does not require the NJDCA to approve the use of electronic transmittal for any document.

## V.    CONCLUSION

For the foregoing reasons, the motion to dismiss is granted.  The Court will dismiss all claims in the Second Amended Complaint with prejudice, with the exception of Plaintiff's FHAA claim against Constable, in his official capacity as the Commissioner of the NJDCA, which will be dismissed without prejudice.  An appropriate order accompanies this Opinion.

Date: _January  20_ , 2016

CLAIRE C. CECCHI
United States District Judge

17